# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| Tina Phillips, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Kraft Heinz Foods Company, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      Kraft Heinz Foods Company ("Defendant") manufactures blueberry and raspberry flavored drink enhancer with "No Artificial Flavors" and "Natural Flavor With Other Natural Flavor" under its Crystal Light brand ("Product").





## I.   CONSUMER AVOIDANCE OF ARTIFICAL FLAVORS

2.   According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

3.   This is because consumers try and avoid ingredients made with chemical additives and synthetic solvents in laboratories.

4.   According to Forbes, 88% of consumers consider foods without artificial flavors to be more natural and healthier than foods with artificial flavors and would pay more for such foods.

5.   Paul Manning, president of Sensient Technologies, affirmed that "Consumer desire for naturally flavored products is an emerging trend."[2]

6.   According to Nielsen's Global Health & Wellness Survey, the absence of artificial flavors is very important for over 40% of consumers.

7.   The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these

---

[1] Lauren Manning, How Big Food Is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.

[2] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.

synthetic ingredients.[3]

8.    Mintel confirmed consumer avoidance of artificial flavors is just as strong as their desire for natural flavors, in its Report, "Artificial: Public Enemy No. 1."[4]

9.    Almost half of Americans seek out foods with natural flavorings, compared to ten percent who prefer artificial flavorings.

10.   A recent survey shows more than three in four people worldwide are convinced that artificial flavors have no place on their ingredient lists.[5]

11.   Surveys by Nielsen, New Hope Network, and Label Insight concluded that between sixty and eighty percent of the public tries to avoid artificial flavors.

## II.   INCREASED CONSUMPTION OF WATER ENHANCERS

12.   According to Mordor Intelligence's US Water Enhancer Market Analysis, the market for water enhancers, defined as non-caloric flavored liquid

---

[3] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.

[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

[5] What 'Natural' Really Means to Consumers GNT Group's Guide to Global Consumer Demands attests importance of natural colors for future-proof products, July 13, 2017.

concentrates, is increasing at close to ten percent a year.[6]

13.    Several reasons are behind this explosive growth.

14.    First, rising levels of obesity has made the population more reluctant to consume sugary drinks, whether fruit juices or carbonated soft drinks ("CSD").

15.    Second, in place of these calorie-laden drinks, public health officials and the media have emphasized substituting water, a non-caloric and healthier alternative.

16.    However, "many consumers want more from their water" because of its naturally "plain" taste compared to the flavor of the sodas and fruit juices they are giving up.[7]

17.    Increasing consumer avoidance of artificial flavoring ingredients has made companies focus on delivering authentic and intense taste experiences while using only natural flavoring ingredients.

## III.  FLAVOR SOURCE REQUIRED TO BE DISCLOSED

18.    Research shows that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby

---

[6] Mordor Intelligence, United States Water Enhancer Market – Growth, Trends, Covid-19 Impact, And Forecasts (2023 – 2028)
[7] Isaac Fletcher, Water is Getting a New Image (And Taste) From Enhancers, Food Online, May 21, 2014.

"develop[ing] sensory expectations" about attributes such as its taste and the source of that taste.[8]

19.   Consistent with these principles, the Food and Drug Administration ("FDA"), at the direction of Congress, established regulations to prominently inform consumers of the source of a food's main flavor.[9]

20.   First, the FDA distinguished between flavors, which were substances that imparted taste, and food, which provided nutritional value. 21 C.F.R. § 101.22(a)(1), 21 C.F.R § 101.22(a)(3).

21.   Second, it distinguished between natural and artificial flavor.

22.   It defined "natural flavor" as the "essential oil, oleoresin, essence or extractive" from fruits or vegetables. 21 C.F.R § 101.22(a)(3).

23.   Natural flavor compounds include (1) nonvolatiles like sugars, amino acids, fatty acids, and organic acids and (2) volatiles like aromatic hydrocarbons, aldehydes, acetals, ketones, alcohols, esters, and sulfur compounds.

---

[8] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Masako Okamoto and Dan Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.
[9] This State adopted these federal regulations.

24.   In contrast, "artificial flavor" was defined as substances used to impart flavor which were from synthetic or artificial sources. 21 C.F.R. § 101.22(a)(1), 21 C.F.R § 101.22(a)(3).

25.   Third, it required that that whenever "[a] label, labeling, or advertising of a food makes any direct or indirect representations with respect to [a] primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means," that is considered the "characterizing flavor," and its source must be disclosed to consumers. 21 C.F.R. § 101.22(i)(1).

26.   According to one scholar and expert, this rule "is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two."[10]

## IV.  FLAVOR OF BLUEBERRIES AND RASPBERRIES

27.   Taste is a combination of sensations arising from specialized receptor cells in the mouth.[11]

28.   Taste is defined as sensations of sweet, sour, salty, bitter, and umami.

29.   Taste is complex, with the taste of sour including the sourness of vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples and cherries (malic

---

[10] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.
[11] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).

acid), and wines (tartaric acid).

30.  Each of those acids is responsible for unique sensory characteristics of sourness.

31.  Consumer acceptability of the flavor of blueberries and raspberries is based on their perceived sweetness, sourness, and tartness.

32.  The prototypical blueberry and raspberry tastes are based on the interaction of free sugars, mainly glucose and fructose, volatile compounds, and predominant organic acids to create their unique tart, sour and sweet flavor.[12]

| Fruit | First Predominant Acids | Second Predominant Acids |
|---|---|---|
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Citric Acid | Malic Acid |
| Blueberry[13] | Malic Acid | Citric Acid, Quinic Acid |
| Cherry | Malic Acid (94%) | Tartaric Acid, Succinic Acid |
| Cherry (black) | Citric Acid | Malic Acid |
| Cherry (tropical) | Malic Acid (32%) | Citric Acid |
| Chili Peppers (habanero) | Citric Acid | Malic Acid, Succinic Acid |
| Coconut | Malic Acid | Citric Acid |
| Dragon Fruit | Malic Acid | Citric Acid |
| Grape | Malic Acid (60%) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |

---

[12] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).
[13] Across cultivars, such as Highbush, Jersey, etc.

| Kiwi | Quinic Acid, Citric Acid | Malic Acid |
| Lemon | Citric Acid | Malic Acid |
| Lime | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

33.   For the main cultivars of blueberries, malic acid is the first predominant acid while in raspberries it is the second predominant acid.

34.   A study by Zhang, Jia, et al., concluded that "Sweet and sour are the most important taste of blueberries, and they are produced by sugar and acid, respectively," and that "it is very important to evaluate the composition and levels of sugar and acid in blueberries."[14]

35.   Raspberries are "tart and tangy [and] often enjoyed for [their] sweet and sour flavor."[15]

---

[14] "Evaluation of Sugar and Organic Acid Composition and their Levels in Highbush Blueberries from Two Regions of China," Journal of Integrative Agriculture, 19.9 (2020): 2352-2361.

[15] Greener Thumb, Why Do Raspberries Taste Sour, Rather Be Gardening, July 29, 2023.

36.   While its most predominant organic acid is citric acid, "the sour taste of raspberries is the most prominent characteristic."

37.   This is because "Raspberries contain a naturally occurring acid called malic acid [which] is responsible for the[ir] tart and tangy flavor."

38.   While "The amount of malic acid in raspberries varies depending on the variety and ripeness of the fruit, [] generally, the more ripe the raspberry, the more malic acid it contains."

39.   The amount and proportion of malic acid is a critical factor in producing the preferred tart, sweet and sour blueberry and raspberry taste valued by consumers.

## V.   LABEL MISLEADING ABOUT FLAVOR SOURCE

40.   The front label statements of "No Artificial Flavors," "Blueberry Raspberry" and "Natural Flavor With Other Natural Flavor," with pictures of plump blueberries and ripe raspberries, appeal to the more than seven out of ten consumers who avoid artificial flavors.

41.   By representing that the Product has "No Artificial Flavors" and describing its blueberry and raspberry taste as coming from natural flavoring ingredients, consumers will not expect artificial flavors nor any artificial flavoring ingredients that provide its blueberry and raspberry taste.

42.   While the ingredient list in small print on the back lists "Natural Flavor" as the fourth most predominant ingredient by weight, comprising less than two

percent of the total, this is less than "Malic Acid," listed second.



**INGREDIENTS:** WATER, <mark>MALIC ACID</mark>, CITRIC ACID, CONTAINS LESS THAN 2% OF <mark>NATURAL FLAVOR</mark>, SUCRALOSE & ACESULFAME POTASSIUM (SWEETENERS), POTASSIUM CITRATE, GUM ARABIC, SUCROSE ACETATE ISOBUTYRATE, RED 40, BLUE 1, POTASSIUM SORBATE (PRESERVATIVE).

43.   Even if a consumer reviewed the fine print ingredient list on the back label, they would not know which version of "Malic Acid" the Product uses.

44.   This is because malic acid has two isomers, or arrangements of atoms, L-Malic Acid and D-Malic Acid, which are like right and left-hand versions of the same molecular formula.[16] 21 C.F.R. § 184.1069.

---

[16] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).



45.   L-Malic Acid occurs naturally in blueberries and raspberries, while D-Malic Acid does not occur naturally anywhere.

46.   D-Malic Acid is most found as a racemic mixture of the D and L isomers, or DL-Malic Acid, commercially made from petroleum.

47.   It is made through a catalytic process with numerous chemical reactions, including heating maleic anhydride with water under extreme pressure at roughly 180℃.

48.   This results in an equilibrium mixture of malic and fumaric acids.

49.   The soluble fumaric acid is filtered off and recycled, and the synthetic, or DL-, malic acid is concentrated and crystallized.

50.   Laboratory analysis using chiral HPLC and/or enzymatic methods with D-malate dehydrogenase (D-MDH) concluded or would conclude that the malic acid used in the Product was the artificial DL-Malic Acid, by identifying the synthetic D-isomer.

51.   This was because D-Malic acid was preferentially oxidized over L-Malic

11

acid.

52.   D-Malic Acid is an artificial flavor because it imparts the taste of blueberries and raspberries to the Product, rendering "No Artificial Flavors" false and misleading.

53.   Federal and state regulations require that because the Product contains DL-Malic Acid that imparts the flavor of blueberries and raspberries, "Blueberry Raspberry" is required to "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Blueberry Raspberry Flavored" or "Artificially Flavored Blueberry Raspberry." 21 C.F.R. § 101.22(i)(2).

54.   The combination of DL-Malic Acid with sugars is not equivalent to the natural flavors from blueberries and raspberries.

55.   The addition of DL-Malic Acid imparts, creates, simulates, resembles and/or reinforces the tart, tangy, sour, and sweet taste that blueberries and raspberries are known for.

56.   Defendant could have added more blueberry and raspberry ingredients or L-Malic Acid from blueberries and raspberries but used artificial DL-Malic Acid because it cost less and/or more accurately simulated, resembled, and/or reinforced the taste of blueberry and raspberry.

57.   DL-Malic Acid is not a "natural flavor" as defined by federal and state regulations, because it is not from a fruit, vegetable, or other natural source, but from

12

petroleum and made through chemical reactions.

58.   DL-Malic Acid does not supplement, enhance, or modify the original taste of blueberries and raspberries, because it is a core component of blueberries' and raspberries' taste. 21 C.F.R. § 170.3(o)(11).

## JURISDICTION AND VENUE

59.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

60.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

61.   Plaintiff is a citizen of Florida.

62.   Defendant is a citizen of Delaware and Pennsylvania.

63.   The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

64.   The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at thousands of physical locations in Florida, such as grocery stores, convenience stores, big box stores, warehouse club stores, gas stations, drug stores and other markets, and available to Florida consumers from internet stores, for not less than the last three years.

65.   Venue is in the Tampa Division in this District because Plaintiff resides in Hillsborough County and a substantial part of the events or omissions giving rise

13

to these claims occurred in Hillsborough County, her purchase and consumption of the Product in reliance on the labeling identified here.

## PARTIES

66.   Plaintiff Tina Phillips is a citizen of Hillsborough County, Florida.

67.   Defendant Kraft Heinz Foods Company is a Delaware corporation with a principal place of business in Allegheny County, Pennsylvania.

68.   Defendant owns and controls the Crystal Light brand of beverage mixes, available in powdered and liquid forms.

69.   Crystal Light is the market leader, having pioneered this category in the early 1980s.

70.   Plaintiff read "No Artificial Flavors," "Blueberry Raspberry," and "Natural Flavor With Other Natural Flavors," and saw the pictures of plump blueberries and ripe raspberries.

71.   Plaintiff did not expect the Product to have artificial flavors because the label said, "No Artificial Flavors."

72.   Plaintiff expected the Product's blueberry and raspberry taste was from blueberries, raspberries, and/or natural flavoring ingredients and not artificial flavoring ingredients.

73.   Plaintiff is part of the majority of consumers who avoid artificial flavors for reasons related to health, nutrition, and the environment.

14

74. Plaintiff was unaware the Product contained artificial flavoring ingredients to provide its blueberry and raspberry taste because the label said, "No Artificial Flavors" and "Natural Flavor With Other Natural Flavors."

75. Plaintiff's experience as a consumer led her to expect that if the Product contained artificial flavoring ingredients to provide its blueberry and raspberry taste, it would not tell her it had "No Artificial Flavors," and that the use of artificial flavoring would be disclosed to her on the front label, since that is how all other foods are labeled.

76. Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

77. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at grocery stores, convenience stores, big box stores, warehouse club stores, drug stores, and/or other similar locations where the Product may be sold, in Hillsborough County, between 2019 and the present.

78. Plaintiff bought the Product at or exceeding the above-referenced price.

79. Plaintiff chose between Defendant's Product and products represented

15

similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components such as the absence of artificial flavors and the source of their fruit taste.

80.   Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

81.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $3.18 for 1.62 oz (48 mL), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

82.   Plaintiff paid more for the Product than she would have paid had she known the representations were false and misleading, as she would not have bought it or would have paid less.

## CLASS ALLEGATIONS

83.   Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **Florida Class:** All persons in the State of Florida who purchased the Product within the statutes of limitations for each cause of action alleged.

16

84.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

85.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

86.   Plaintiff is an adequate representative because her interests do not conflict with other members.

87.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

88.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

89.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

## COUNT I

### Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*

90.   Plaintiff incorporates by reference preceding paragraphs 1-58.

91.   Plaintiff brings this claim on her own behalf and on behalf of each

member of the Florida Class.

92.   Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business.

93.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions, that it had "No Artificial Flavors," its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients and not added artificial flavoring ingredients.

94.   The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the public into believing the Product had "No Artificial Flavors," its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients and not added artificial flavoring ingredients.

95.   Plaintiff and class members relied upon these representations and omissions about artificial flavoring in deciding to purchase the Product.

96.   Plaintiff's reliance was reasonable because of Defendant's reputation as the leader in beverage mixes, known for its high-quality products, honestly marketed to consumers.

97.   Plaintiff and class members would not have purchased the Product or

18

paid as much if the true facts had been known, suffering damages.

98.  Defendant's conduct offends established public policy and is immoral, unethical, oppressive, and unscrupulous to consumers.

99.  Plaintiff and class members are entitled to damages in an amount to be proven at trial.

## COUNT II

### False and Misleading Adverting, Fla. Stat. § 817.41

100. Plaintiff incorporates by reference preceding paragraphs 1-58.

101. Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

102. Defendant made misrepresentations and omissions of material fact, that the Product had "No Artificial Flavors," its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients and not added artificial flavoring ingredients, through its advertisements and marketing, through various forms of media, product descriptions, and targeted digital advertising.

103. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

104. Defendant knew that these statements were false and/or misleading.

105. Defendant intended for consumers to rely on its false statements for the

purpose of selling the Product.

106. Plaintiff and class members did in fact rely upon these statements.

107. Reliance was reasonable and justified because of Defendant's reputation as a trusted and reliable company, known for its category-leading products, honestly marketed to consumers.

108. As a result of Defendant's misrepresentations, Plaintiff and class members suffered damages in the amount paid for the Product.

109. Plaintiff and class members are entitled to damages as set forth above.

## COUNT III

### Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose and
### Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

110. Plaintiff incorporates by reference preceding paragraphs 1-58.

111. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it had "No Artificial Flavors," its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients and not added artificial flavoring ingredients.

112. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

20

113. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as one with "No Artificial Flavors," and which got its main taste from either its main flavoring ingredients or natural flavorings instead of artificial flavoring ingredients and developed its marketing and labeling to directly meet those needs and desires.

114. The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that it had "No Artificial Flavors," and that its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients instead of artificial flavoring ingredients.

115. Defendant affirmed and promised that the Product had "No Artificial Flavors," and that its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients instead of artificial flavoring ingredients.

116. Defendant described the Product so Plaintiff and consumers believed it had "No Artificial Flavors," and that its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients instead of artificial flavoring ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

117. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

118. This duty is based on Defendant's outsized role in the market for beverage

mix products, custodian of the Crystal Light brand, the leading seller of such products for decades.

119. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

120. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Products' express and implied warranties associated with the Product.

121. Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

122. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

123. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on its packaging, container, or label, because it was marketed as if it had "No Artificial Flavors," and that its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients instead of artificial flavoring ingredients.

124. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because

she expected it had "No Artificial Flavors," and that its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients instead of artificial flavoring ingredients and she relied on Defendant's skill and judgment to select or furnish such suitable products.

## COUNT IV

### Fraud
### (Fed. R. Civ. P. 9(b) Allegations)

125. Plaintiff incorporates by reference preceding paragraphs 1-58.

126. Defendant misrepresented that the Product had "No Artificial Flavors" and that its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients instead of artificial flavoring ingredients.

127. Defendant omitted the required "artificially flavored" disclosure from the front label which identified the Product's flavor.

128. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

129. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

130. To the extent necessary, as detailed in the paragraphs above and below,

Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

131. WHO: Defendant, Kraft Heinz Foods Company, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product by representing it had "No Artificial Flavors," and that its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients instead of artificial flavoring ingredients.

132. WHAT: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product had "No Artificial Flavors," and that its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients instead of artificial flavoring ingredients.

133. Defendant knew or should have known this information was material to all reasonable consumers and impacts consumers' purchasing decisions.

134. Defendant conducts research on consumer preferences and is aware of consumer demand for products without artificial flavors.

135. Yet, Defendant has represented and/or continues to represent that the Product has "No Artificial Flavors" and that its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients instead of artificial flavoring ingredients.

24

136. WHEN: Defendant made material misrepresentations and/or omissions detailed herein, including that the Product had or has "No Artificial Flavors" and that its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients instead of artificial flavoring ingredients, continuously throughout the applicable Class period(s) and through the filing of this Complaint.

137. WHERE: Defendant's material misrepresentations and omissions, that the Product had "No Artificial Flavors," and that its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients instead of artificial flavoring ingredients, were made in the advertising and marketing of the Product, on the front of the packaging, which all consumers buying would inevitably see and take notice of.

138. HOW: Defendant made written and visual misrepresentations and omissions in the advertising and marketing of the Product, that it had "No Artificial Flavors," and that its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients instead of artificial flavoring ingredients.

139. As such, Defendant's representations are false and misleading.

140. And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions before purchasing the Product.

141. WHY: Defendant misrepresented that the Product had "No Artificial

Flavors," and that its blueberry and raspberry taste was from blueberries, raspberries and/or natural flavoring ingredients instead of artificial flavoring ingredients, for the express purpose of inducing Plaintiff and class members to purchase the Product at a substantial price premium, in part based on consumer demand for products without artificial flavoring ingredients.

142. As such, Defendant profited by selling the misrepresented Product to thousands of consumers throughout the State of Florida.

## COUNT V

### Unjust Enrichment

143. Plaintiff incorporates by reference preceding paragraphs 1-58.

144. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary, statutory, and/or punitive damages pursuant to applicable laws;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   August 3, 2023

Respectfully submitted,

/s/ William Wright
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Lead Counsel for Plaintiff*

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Counsel for Plaintiff*
**Pro Hac Vice* Application Forthcoming

27